THE ATTORNEY GENERAL
OF TEXAS



JOHN L. HILL.
ATTORNEY GENERAL.

April 20, 1976

The Honorable Garrett Morris
Chairman
Public Utility Commission of
   Texas
P. O. Box 12577
Austin, Texas    78711

Opinion No. H- 812

Re: Application of the
Public Utilities Act to
retail public utilities
and municipally owned
utilities.

Dear Mr. Morris:

You have requested our opinion on five questions relating
to the Public Utilities Act, article 1446c, V.T.C.S. After
receiving your question, we received numerous requests from
interested parties to delay answering the question until
they had an opportunity to submit briefs for our considera-
tion. We have received many comprehensive briefs from cities,
special districts, private utility companies, consumer groups
and most recently from the Public Utility Commission itself.

Your questions primarily involve sections 50 and 51 of
the Act, which provide:

> Sec. 50. Beginning one year after the
> effective date of this Act, unless other-
> wise specified:
> (1) No public utility may in any way
> render service directly or indirectly to
> the public under any franchise or permit
> without first having obtained from the
> commission a certificate that the present
> or future public convenience and necessity
> require or will require such installation,
> operation, or extension.

(2)   Except as otherwise provided in this article no retail public utility may furnish, make available, render, or extend retail public utility service to any area to which retail utility service is being lawfully furnished by another retail public utility on or after the effective date of this Act, without first having obtained a certificate of public convenience and necessity that includes the area in which the consuming facility is located.

Sec. 51. (a)  A public utility is not required to secure a certificate of public convenience and necessity for:
(1)   an extension into territory contiguous to that already served by it and not receiving similar service from another public utility and not within the area of public convenience and necessity of another utility of the same kind;
(2)   an extension within or to territory already served by it or to be served by it under a certificate of public convenience and necessity; or
(3)   operation, extension, or service in progress on the effective date of this Act.

(b)   Any extensions allowed Subsection (a) of this section shall be limited to devices for interconnection of existing facilities or devices used solely for transmitting public utility services from existing facilities to customers of retail utility service.

Your first question is:

Does 'public utility' as used in Sub-Division 1, Section 50, of the Act, include 'Retail Public Utility', as defined in Section 49 of the Act.

Section 49 provides:

> Sec. 49. For the purposes of this article only: (a) 'Retail public utility' means any person, corporation, municipality, political subdivision or agency, or cooperative corporation, now or hereafter operating, maintaining, or controlling in Texas facilities for providing retail utility service.
>     (b) 'Public utility' does not include any person, corporation, municipality, political subdivision or agency, or cooperative corporation under the jurisdiction of the Railroad Commission. (Emphasis added).

Thus, if the phrase, "retail public utility" is included within the term "public utility" as used in section 50 of the Act, municipally owned utilities will be required to obtain certificates of convenience and necessity under section 50(1), which relates to "public utilities" as well as under section 50(2), which relates only to "retail public utilities." However, "public utility" is defined in great detail in section 3(c) of the Act. That section provides in part:

> (c) The term 'public utility' or 'utility,' when used in this Act, includes any person, corporation, river authority, cooperative corporation, or any combination thereof, other than a municipal corporation, or their lessees, trustees, and receivers, now or hereafter owning or operating for compensation in this state equipment or facilities for:
>     (1) producing, generating, transmitting, distributing, selling, or furnishing electricity ('electric utilities' hereinafter);
>
> . . .
>
>     (4) the transmitting, storing, distributing, selling, or furnishing of potable water to the public or for resale to the public for any use,

or the collection, transportation, treatment,
or disposal of sewage, or other operation of
a sewage disposal service for the public, other
than equipment or facilities owned and operated
for either purpose by a city, town or other
political subdivision of this state. The
term 'public utility' or 'utility' includes
any municipally owned gas or electric utility,
whether owned separately or in conjunction
with other municipalities operated by a board
of trustees which as of May 1, 1975, was not
directly appointed by the governing body of
the municipality, and does not include any
other municipally owned utility unless other-
wise provided in this Act. (Emphasis added).

While the Legislature might have chosen more descriptive
terms to express these two concepts, after examining the
language of the definitions and the general thrust of the Act,
we do not feel at liberty to ignore the clear language used
by the Legislature in excluding "any other municipally owned
utility unless otherwise provided in this Act" from the
term "public utility." It is accordingly our opinion that
the term "public utility" in section 50 must be read in
light of the section 3(c) definition of that term, which
excludes certain municipalities. The term does not include
the more broadly defined "retail public utility" found in
section 49.

Your second question is:

Is a municipally owned utility required
to obtain a 'Certificate of Convenience
and Necessity' for operations within
its own city limits.

Subject to the exceptions contained in section 51,
section 50(2) would require retail public utilities, including
those municipally owned, to secure a certificate before
serving an area which is being served by another retail
public utility. Of course, this section is limited to new
services, operations, or extensions. Sec. 51(a)(3).

Section 50(1), however, which requires certificates of convenience and necessity before rendering any service, is not generally applicable to municipally owned utilities. Compare sec. 3(c)(4). Accordingly, with the exception contained in section 3(c)(4), a municipally owned utility need obtain a certificate of convenience and necessity for operations within its own city limits only when the operations are a facet of retail utility service and take place in an area being served by another retail public utility.

Your third question is:

> Does Sub-Section 1, Section 50 of the Act prohibit any public utility, including a retail public utility from rendering services to a new area after September 1, 1976, without first acquiring a 'Certificate of Convenience and Necessity.'

Since we have already discussed the application of section 50 to municipally owned utilities, we will limit our discussion of this question to privately owned public utilities, which include privately owned retail public utilities.

Section 50(1) clearly requires such public utilities to obtain a certificate prior to extending services to a new area unless the new services come within the exceptions of section 51. Section 51(a)(1) excepts extensions into "territory contiguous to that already served by it" and not being served by or within the certificated area of another utility of the same kind. Section 51(a)(2) excepts "extensions within or to territory already served by it or to be served by it under a certificate." Section 51(a)(3) excepts extensions in progress on September 1, 1975. Of course, all of these excepted extensions are limited by section 51(b), which allows only "devices for interconnection of existing facilities or devices used solely for transmitting" services from existing facilities to retail customers. Only the second part of section 51(b) would allow extensions to new areas, and such extensions would in our view be limited to "drop-off" lines from existing facilities directly to retail customers. For example, a water main could not be extended under section 51, but pipes could be run from such a main to

retail customers in its service area. Unless an extension of service to a new area is within the exceptions contained in section 51, section 50(1) would require private utilities to obtain a certificate prior to such an extension.

Your fourth question is:

> Does Section 51, Sub-Section (a), of the Act permit a public utility to continue servicing an area without a 'Certificate of Convenience and Necessity' as long as no addition is made to the distribution or transmission system.

Section 51(a)(3) provides that a certificate need not be obtained for operation, extension, or service in progress on September 1, 1975. As previously noted and discussed, extensions are limited by section 51(b). However, if no extensions are involved, a public utility may continue to operate in and serve an area in which it was operating on September 1, 1975 without a certificate of convenience and necessity.

Your final question is:

> Does Section 26(b) of the Act authorize the citizens of a municipality to appeal to the Commission rates established by a municipally owned utility?

Section 26 provides in part:

> Sec. 26. (a) Any party to a rate proceeding before the governing body of a municipality may appeal the decision of the governing body to the commission or railroad commission.
> (b) Citizens of a municipality may appeal the decision of the governing body in any rate proceeding to the commission or railroad commission through the filing of a petition for review signed by the lesser of 20,000 or 10 percent of the number of qualified voters of such municipality.

(c)   Ratepayers of a municipally owned gas or electric utility outside the municipal limits may appeal any action of the governing body affecting the rates of the municipally owned gas or electric utility through filing with the commission or railroad commission, as appropriate, petition for review signed by the lesser of 10,000 or 5 percent of the ratepayers served by such utility outside the municipal limits. For purposes of this subsection each person receiving a separate bill shall be considered as a ratepayer.  But no person shall be considered as being more than one ratepayer notwithstanding the number of bills received. Such petition for review shall be considered properly signed if signed by any person, or spouse of any such person, in whose name residential utility service is carried.

Section 26 provides for appeals in three types of situations involving municipally owned and municipally regulated utilities.  Subsection (a) applies primarily to proceedings in which municipalities regulate rates of privately owned utilities.  Subsection (c) clearly applies to appeals by persons who live outside a city but who are served by that city's municipally owned utility.  It is apparent that subsection (b) permits appeals by city residents from rate decisions made by the municipality relating to utilities which are privately owned but regulated by the city.  Your question requires us to determine whether subsection (b) also applies to appeals of rates of municipally owned utilities.

The appellate procedure established in subsection (b) applies to rate proceedings.  Section 3(d) defines "rate" as being charged by a "public utility."  Since section 3(c)(4) provides that a municipally owned utility is not a "public utility" unless otherwise provided, the term "rate proceeding" contained in section 26(b) does not include a proceeding to establish rates of municipally owned utilities.  See also sec. 27(f).  In the absence of any language indicating an .

intent to make an exception to the definitions established by the Legislature, it is not our prerogative to infer such an intent. Accordingly, we feel we have no choice but to state that under the present wording of the statute, rate-payers outside the municipality can appeal a decision in a proceeding to fix rates of municipally owned utilities, but a resident of the municipality may not. If a different result was intended, it must await further legislative clarification. But see section 3(c)(4), which provides that any municipally owned utility which is governed by a board of trustees not directly appointed by the city council is essentially treated as if it were privately owned.

### S U M M A R Y

The Public Utility Regulatory Act requires that municipally owned public utilities obtain a certificate of convenience and necessity for new retail service only when the area to be served is being served by another retail public utility. The present wording of the Act does not provide for an appeal by residents of a city from charges established by that city's municipally owned utility.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb